IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK WALSH,

    Plaintiff,

v.

JOHNSON CONTROLS, INC.,

    Defendant.

No. C 17-03055 WHA

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND ADVANCEMENT OF TRIAL AND PRETRIAL CONFERENCE DATES**

## INTRODUCTION

In this employment-discrimination action, both parties move for summary judgment on a portion of plaintiff's claims. For the reasons below, plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Defendant Johnson Controls, Inc. (formerly Cal-Air) hired plaintiff Mark Walsh, a white male, around 2003. At the time, Walsh was 43 years old. Throughout his employment, Walsh worked at JCI's Santa Rosa branch. He belonged to the Sheet Metal Workers' International Association, Local Union No. 104 and payroll classified him as a sheet metal worker. Walsh claims, however, that he worked as a project manager. His responsibilities included installing and servicing materials used in HVAC systems, as well as project management tasks such as sales and procurement. The parties dispute the amount of time Walsh spent on these respective tasks (Worrell Decl. ¶¶ 5–6; Walsh Decl. ¶¶ 13–15).

In May 2013, Walsh injured his right shoulder while moving a heavy toolbox at work. A few days later, Walsh began to work from home while he received medical treatment and awaited a referral to an orthopedic surgeon. In July 2013, Walsh stopped working altogether and went on medical leave in anticipation of his upcoming shoulder surgery (Walsh Decl. ¶¶ 2–3).

JCI began to restructure its Santa Rosa branch in late 2012, phasing out the fabrication and assembly of HVAC systems and eliminating union positions. By September 2013, JCI had completely outsourced its sheet metal fabrication function from its Santa Rosa branch. Per JCI's policy, however, employees on disability leave could stay employed until their benefits expired, at which point JCI would evaluate whether other work existed in the company that the employee could perform. As a result, Walsh was the only sheet metal journeyman still employed in Santa Rosa in September 2013 (Worrell Decl. ¶¶ 9–10).

In November 2013, Walsh's doctor cleared him to return to work on modified sedentary duty. Walsh informed JCI that he could perform non-physical activities and asked whether or not JCI had available work. Walsh did not receive a response. Throughout 2014 and 2015, Walsh continued to send JCI regular emails explaining changes in his work restrictions. Although Walsh requested that JCI let him know if any work existed within his restrictions, no such work was available. Other than one email in August 2015, JCI did not respond to Walsh's updates (Walsh Decl. ¶¶ 4–7; Worrell Decl. ¶ 11).

In November 2015, Walsh's doctor determined that Walsh had reached "maximum medical improvement," and cleared him to return to work with permanent restrictions on certain physical activities. Walsh informed JCI of this development in a December 2015 email, explaining that he was "ready to return to work right away" and asking that JCI contact him to discuss returning to work (Worrell Decl. ¶ 12; JCI Exh. 8; Walsh Decl. ¶ 8).

In February 2016, Christine Worrell, a member of JCI's human resources department, and Steven Kallan, a branch service manager, held calls with Walsh about coming back to work. They discussed Walsh's former job duties and his doctor's restrictions. By then, however, no open positions existed in Santa Rosa which Walsh qualified for and could perform.

Rather than terminate Walsh immediately, JCI gave Walsh 30 days to review and apply for any other available position in the company (Worrell Decl. ¶¶ 13–19; Second Walsh Decl. ¶¶ 3–7).[1]

That month, Walsh applied for two open positions: one as a project manager and the other as a service truck manager. Walsh lacked the industry experience and educational qualifications required for the project-manager position. Although Walsh met the minimum qualifications for the service-truck-manager position, he did not get the job. During a pre-screening interview, a JCI recruiter determined that Walsh ranked as the least-qualified applicant (Duchesneau Decl. ¶¶ 10–17; Coplai Decl. ¶¶ 4–9; Worrell Decl. ¶¶ 20–22).

In May 2016, JCI terminated Walsh's employment. Upon his termination, Walsh did not receive any pay for accrued vacation time. That same month, Walsh filed a complaint with the Department of Fair Employment and Housing, alleging that JCI had failed to provide him with a reasonable accommodation, failed to engage in a good faith interactive process, and discriminated against him based on disability. DFEH sent Walsh a right-to-sue letter in April 2017, after which Walsh initiated this action in state court. JCI timely removed the action. Both parties now move for summary judgment on a portion of Walsh's claims. Walsh also moves for summary judgment on one of JCI's affirmative defenses (Dkt. Nos. 1, 28–29).

**ANALYSIS**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is "a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). Our court of appeals "require[s] very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry' — one that is most appropriately conducted by the factfinder, upon a full record." *Ibid.* (citation and internal quotation marks omitted).

---

[1] The parties dispute whether these conversations began in January 2016, rather than in February.

1. **FAILURE TO PROVIDE REASONABLE ACCOMMODATION.**

Walsh asserts that JCI failed to reasonably accommodate his physical disability after his 2013 work injury. The elements of a prima facie claim for failure to make reasonable accommodations are: (1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is qualified to perform the essential functions of the position; and (3) the employer failed to reasonably accommodate the plaintiff's disability. *Scotch v. Art Inst. of Cal. — Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1009–10 (2009). Both parties move for summary judgment on this claim.[2]

The parties agree that Walsh had a disability covered by FEHA, but dispute whether or not Walsh could perform the essential functions of his job. In a 2016 complaint to the Department of Fair Employment and Housing, Walsh stated under penalty of perjury: "I was in agreement that I cannot perform the essential functions of my job as the Sheet Metal Worker Foreman Manager/Lead." Walsh's current declaration, however, claims that this admission was merely a "typo." At the hearing on the parties' cross-motions for summary judgment, plaintiff elaborated. He testified that he had not personally typed the narrative in the DFEH complaint, but rather reviewed and signed the complaint after it was written by a DFEH consultant. Walsh further testified that he had simply misread the portion of the complaint at issue before he signed it.

A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts. *Block v. City of Los Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001). While Walsh's claimed mistake is dubius, it is not sufficiently clear from the current record that his declaration should be disregarded as a sham. There accordingly remains a factual dispute as to whether Walsh could perform the essential functions of his old job.

Nevertheless, his claim fails on summary judgment. Holding a job open while an employee seeks treatment for a medical condition can be a reasonable accommodation. *Jensen*

---

[2] The parties dispute whether Walsh's "claims" for failure to reasonably accommodate, failure to engage in the interactive process, and termination in violation of public policy were properly pled in the complaint. Because summary judgment is clearly proper, this order addresses the merits of these claims.

4

*v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000). Here, the undisputed evidence is that JCI held Walsh's job open for three years while he was out on medical leave and receiving treatment for his shoulder. Walsh argues that he should have been provided light-duty work instead. But an employer need not provide an accommodation that would pose an undue hardship on business operations, Cal. Gov. Code § 12940(m), and Walsh points to no evidence suggesting that such light-duty work was available during the relevant period. The summary judgment record instead shows the absence of such work. Walsh therefore cannot show that JCI failed to provide a reasonable accommodation.

Relying on the testimony of Marc Duchesneau (JCI's FRCP 30(b)(6) witness), Walsh asserts that a sales job was available. But Duchesneau did not so testify. He instead testified that at some unknown time JCI was "looking for somebody to handle sales in Santa Rosa," but that he did not know whether JCI "ever had the business to support that." The declaration of Bill Rogers, a former JCI employee, gets Walsh no further. Rogers explained that JCI never replaced a fired sales representative in 2012, but added the important qualification that he "do[es] not recall the exact status of efforts to fill that position and whether, or at what exact points in time there was a 'Request to Hire' requested and approved for the position." At the hearing on these motions, Walsh's counsel confirmed that these two items were the sole basis for Walsh's claim that a sales job existed. Counsel also acknowledged that "extrapolation" from these vague items was necessary to support that claim. Without more, Walsh has failed to raise a triable issue of whether or not JCI had alternative light-duty work available after November 2013.

The undisputed evidence further shows that when Walsh reached "maximum medical improvement" at the end of 2015, he did not qualify for any vacant positions. Again, by then, all sheet-metal-worker positions in Santa Rose had been eliminated. JCI accordingly allowed Walsh to apply for any other open position in the company. Walsh applied for two jobs. It is undisputed that he did not meet the minimum qualifications for the project-manager position. It is also undisputed that, although Walsh met the minimum qualifications for the service-truck-manager position, he was the least qualified candidate to apply.

5

Walsh's counsel confirmed these concessions at the hearing but attempted to shift the Court's attention to the earlier time period — referred to by counsel as the "black hole" when there was radio silence from JCI — between November 2013 and February 2016. As explained above, however, Walsh has failed to raise a triable issue as to whether or not light-duty work was available during that time.

JCI's motion for summary judgment on Walsh's claim for failure to accommodate is accordingly **GRANTED**. Walsh's motion for summary judgment on this claim is **DENIED**.[3]

### 2. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS.

Both parties also move for summary judgment on Walsh's claim that JCI failed to engage in the interactive process. FEHA makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with an employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). To prevail on a Section 12940(n) claim, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015); *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 984 (2008).

Walsh argues that until February 2016, JCI "did nothing" after learning that Walsh could return for limited work in November 2013. As explained above, however, Walsh cites no evidence suggesting that JCI had any light-duty work available. Instead, the undisputed evidence shows that JCI accommodated Walsh by allowing him to remain on paid medical leave while he obtained treatment for his injury. Because Walsh fails to identify an alternative reasonable accommodation that would have been available, there is no genuine issue of material fact concerning Walsh's claim for failure to engage in the interactive process. JCI's motion for

---

[3] Walsh's papers extensively assert attorney argument without citations to the evidentiary record. FRCP 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." District courts are not tasked with scouring the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

6

summary judgment on this claim is **GRANTED**. Walsh's motion for summary judgment on this claim is **DENIED**.

Walsh also moves for summary judgment on JCI's affirmative defense that Walsh failed to actively engage in the interactive process, but puts forth no argument or evidence to support his motion. Walsh's motion for summary judgment as to JCI's affirmative defense is accordingly **DENIED**.

### 3. DISABILITY DISCRIMINATION.

Walsh also claims that JCI violated FEHA by discriminating against him based on disability. California has adopted the three-stage burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for FEHA discrimination claims. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). Under this framework, the plaintiff has the initial burden to establish a prima facie case of discrimination. This burden requires the plaintiff to identify an action taken by the employer that, if unexplained, gives rise to an inference of discrimination. If the plaintiff meets his burden at the first step, "the burden shifts to the employer to rebut the presumption." In the third step, the plaintiff has the opportunity to attack the employer's proffered reasons as pretext for discrimination. *Id.* at 354–56.

This order assumes, without deciding, that Walsh can establish a prima facie case for his disability discrimination claim. He has not, however, raised a triable issue of pretext or otherwise demonstrated a discriminatory motive for his termination, as now discussed.

JCI offers a legitimate, nondiscriminatory reason for Walsh's termination. JCI explains that it terminated Walsh because it had eliminated all sheet-metal-worker positions from Santa Rosa in 2013. When Walsh returned from medical leave in 2016, JCI allowed Walsh to apply for any available position in the company. Walsh did not meet the minimum qualifications for the project-manager position to which he applied, and while he met the minimum qualifications for the service-truck-manager position, he was the least-qualified applicant. JCI's stated reasons for Walsh's termination and the supporting evidence rebut a prima facie case of discrimination.

Walsh does not dispute that by 2013 all sheet-metal-journeyman positions had been eliminated. Nor does Walsh dispute that he was unqualified for the two positions to which he applied after returning from medical leave. Instead, Walsh argues that "the core of JCI's liability" is JCI's failure to engage in the interactive process from November 2013 through February 2016. This argument conflates Walsh's disability discrimination claim with his claim for failure to engage with the interactive process. Walsh makes no other effort to attack JCI's proffered nondiscriminatory reasons for his termination. JCI's motion for summary judgment on this claim is accordingly **GRANTED**.

4. **AGE DISCRIMINATION.**

Walsh also claims JCI violated FEHA by discriminating against him based on age. The three-stage burden-shifting test described above also applies to his claim for age discrimination. *Guz*, 24 Cal. 4th at 354. Here, Walsh fails at step one. To make a prima facie showing of age discrimination, Walsh must prove: (1) that he was more than forty years of age, (2) that he was performing competently in his position, (3) that he suffered an adverse employment action, and (4) that some other circumstance suggests discriminatory motive for the adverse action. *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 321 (2010).

Walsh's opposition brief makes no argument in defense of his age discrimination claim. Walsh elsewhere references that after his shoulder injury a portion of his job duties were taken over by Kristine Walling, a younger JCI employee (Walsh Dep. 117:5–120:8). Walsh also notes that JCI management had multiple conversations with Charlie Smith — a younger sheet metal journeyman who ultimately left the company in 2014 — regarding alternative work opportunities at JCI (Duchesneau Dep. 86:3–89:5). It would be unreasonable to conclude from these items that Walsh's termination in 2016 was due to intentional discrimination based on age. JCI's motion for summary judgment on Walsh's age discrimination claim is accordingly **GRANTED**.

5. **TORTIOUS TERMINATION IN VIOLATION OF PUBLIC POLICY.**

Walsh agrees that his claim for tortious termination in violation of public policy is based on the same facts and theories as his FEHA claims. Walsh's derivative tort claim therefore fails

8

for the same reasons his FEHA claims fail. JCI's motion for summary judgment on this claim is
**GRANTED**.

### 6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Walsh's claim for intentional infliction of emotional distress rests solely on a string of text messages received from a JCI employee on the evening of Walsh's injury. To succeed on this claim, Walsh must prove: (1) outrageous conduct; (2) an intent to cause or a reckless disregard of the possibility of causing emotional distress; (3) severe or extreme emotional distress; and (4) that the outrageous conduct proximately caused the emotional distress. *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1468 (1990). Walsh has failed to put into the record *any* evidence to prove this claim. This order accordingly need not decide whether the claim is barred by the exclusivity provision of California's Workers' Compensation Act. JCI's motion for summary judgment on Walsh's claim for intentional infliction of emotional distress is **GRANTED**.

### 7. FAILURE TO PAY ACCRUED VACATION TIME.

Walsh moves for summary judgment on his claim that JCI violated Section 227.3 of the California Labor Code by failing to pay Walsh for accrued vacation days upon his termination. Section 227.3 states, "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages."

A triable issue exists as to whether Walsh accrued paid vacation time while employed by JCI. JCI's general policy was that union members did not receive paid vacation outside of their union agreement. And at the time of Walsh's termination, human resources employee Christine Worrell reviewed Walsh's entitlement to any final pay and did not see any records indicating that Walsh had any accrued vacation time (Second Worrell Decl. ¶ 27). Walsh, by contrast, states that Jeff Crenshaw, then a JCI regional manager, advised Walsh that JCI would award him fifteen days of paid vacation per year. Walsh says that documents produced in discovery supports this paid vacation policy, but no such documents are submitted with his motion (Walsh Decl. ¶ 16).

9

The documentary evidence that Walsh does submit — an email exchange between himself and JCI human resources employee Joni Walbring — does not entitle him to summary judgment. In this exchange, Walsh told Walbring that he had eight unused vacation days and asked wether or not those days would be rolled over to the following year or whether the vacation days could be used while Walsh was out on medical leave. Walbring responded: "These will roll over. Unable to take vacation while on a leave of absence" (Walsh Exh. 8). It is reasonable to infer from these emails that Walbring only confirmed JCI's general policy concerning vacation days, but did not confirm that Walsh had himself accrued paid vacation. Walsh's motion for summary judgment on this claim is accordingly **DENIED**.

Walsh also moves for summary judgment on his related claim for penalties and attorney's fees under Section 203 of the California Labor Code. Section 203 allows an employee to collect penalties and attorney's fees where the employer *willfully* failed to pay wages due. For the same reasons Walsh is not entitled to summary judgment on his claim for unpaid vacation time, his motion for summary judgment on this claim is **DENIED**.

### 8. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING.

JCI next moves for summary judgment on Walsh's claim for breach of the covenant of good faith and fair dealing. "Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract." *Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1344 (2009). This order accordingly treats Walsh's claim as one for breach of contract.

Walsh's opposition provides no argument in support of this claim. He contends only that "JCI violated the implied covenant of good faith and fair dealing stemming from the employment agreement and the terms communicated to [him] by JCI Executive Jeff Crenshaw." In Walsh's recent declaration, however, he states that Crenshaw agreed Walsh would receive paid vacation days in addition to those provided through his union agreement. He further states that JCI did "not honor" this agreement (Second Walsh Decl. ¶ 8). Pointing to Walsh's deposition testimony — where Walsh stated that JCI had not breached any oral or written contract between them — JCI argues that this portion of Walsh's declaration is a sham affidavit.

10

This order disagrees. These statements are not sufficiently inconsistent to warrant disregarding Walsh's declaration on summary judgment.

JCI cites *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), for the proposition that a party cannot defeat summary judgment with a declaration that contradicts prior sworn testimony, even when the prior sworn statement involves a legal conclusion. *Cleveland* did not apply the sham affidavit rule, but instead addressed the legal effect of the application for, or receipt of, disability benefits on an ADA claim. Recognizing that a party cannot create a genuine issue of material fact by contradicting his own previous sworn statement "without explaining the contradiction or attempting to resolve the disparity," the Supreme Court "believe[d] that a similar insistence upon explanation [was] warranted [] where the conflict involves a legal conclusion." Here, however, no such contradictory statements necessitate explanation. Lay people often fail to equate a "promise" or an "agreement" with a "contract."

There accordingly remains a triable issue of material fact as to whether JCI agreed to provide Walsh with vacation days separate and apart from his union agreement. There also remains a triable issue of material fact as to whether JCI breached this agreement by failing to pay Walsh for accrued vacation days upon his termination. JCI's motion for summary judgment on this claim is **DENIED**.

### 9. PUNITIVE DAMAGES.

Summary judgment is appropriate as to Walsh's claim for punitive damages. A plaintiff is entitled to punitive damages if he can show by clear and convincing evidence that the defendant is guilty of malice, fraud or oppression. Cal. Civ. Code § 3294. Walsh again fails to provide any argument or point to any evidence in support of his claim, asserting only that there exists "sufficient evidence of malice, oppression, and the conscious disregard of [his] rights to warrant the punitive damages claim." JCI's motion for summary judgment as to Walsh's claim for punitive damages is accordingly **GRANTED**.

**10. OBJECTIONS TO EVIDENCE AND REQUEST FOR JUDICIAL NOTICE.**

Walsh objects to Ryan Pederson's interview notes — which reflect comments made by Walsh during the interview for the service-truck-manager position — as inadmissible hearsay. These notes are out-of-court written assertions offered for the truth of the matter asserted. Walsh's objection is accordingly **SUSTAINED**.

JCI raises numerous evidentiary objections to the declaration of Mark Walsh submitted in opposition to JCI's motion for summary judgment. JCI objects to the following statement for lack of foundation and lack of personal knowledge: "Both Christine Walling and Charlie Smith worked on projects that I had been doing at the time of my injury and continued with some of that work after I requested to come back to work in November, 2013." Walsh's declaration fails to explain how he has personal knowledge of these facts given that he was out on medical leave at the time. The objection is accordingly **SUSTAINED**.

JCI similarly objects to the following statement on the grounds that it lacks relevance, foundation, and personal knowledge: "Charlie Smith, who was my East Bay Counter-part with much the same skills and background continued with JCI out of the Hayward Office until February 2018. He developed some of his own work as I did. He had discussions before he retired about other positions within JCI." Again, Walsh's declaration fails to explain how he has personal knowledge of these facts given that he was out on medical leave during the relevant period. The objection is accordingly **SUSTAINED**.

JCI's remaining objections to the Walsh declaration are **OVERRULED**.

Finally, JCI requests judicial notice of a workers' compensation appeals board compromise and release, which is a matter of public record. FRE 201 permits judicial notice of facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Walsh does not oppose JCI's request for judicial notice. It is accordingly **GRANTED**.

**CONCLUSION**

For the reasons stated above, JCI's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Walsh's motion for summary judgment is **DENIED**.

Walsh's counsel has alerted the Court to his unavailability during the currently-scheduled trial dates. Accordingly, the pretrial conference in this matter is advanced to **JULY 18, 2018**, at **2:00 P.M.** The trial in this matter is also advanced and shall begin on **JULY 30, 2018**, at **7:30 A.M.** The trial schedule and time limits shall be set at the final pretrial conference.

**IT IS SO ORDERED.**

Dated: June 18, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE